Yes, 1631, Jonathan Foley v. Wells Fargo Bank. Mr. Hadass, when you're ready. Good morning, Your Honors. May it please the Court, my name is David Hadass and I represent Jonathan Foley. If I could, Your Honor, reserve two minutes for rebuttal. Yes, you may. The District Court in this case erred in two respects. First, it was error for the judge to conclude, as a matter of law, that the letters that Wells Fargo sent to Mr. Foley, in which they denied his applications for loan modifications, satisfied its obligation under the settlement agreement to provide a clear written explanation for those denials. Can you give me, please, the exact language of the settlement agreement? I thought it was merely written explanation. That's a good question. It is written explanation, although I would point out that Wells Fargo, in its statement of facts, characterized it as a clear written explanation or words to that effect. Did you at any point prior to this appeal claim that the written explanation was inadequate because, and this is the term you use now, it was too cursory? Did you raise that below? I don't believe that that word was used, but there were many other words used. Well, the word contradictory was used, I forget, and what were the others? Confusing, inadequate, words to that effect. The gist of this case all along, and I think this is fairly represented in the record, is that these letters did not give Mr. Foley an adequate explanation. When you refer to the letters, do you agree? I think there were, what, four or five letters total? Correct. And did we judge them, the cumulative communicative impact of the letters? The briefs seem to both assume that. I think so, and the letters are basically repeats of each other. They're sort of two versions of the letters, so you really have two. I don't think that's the case. One of them really is cursory and tells you essentially nothing, but a couple others, one in particular, tell you a lot. This would be the last letter which was received after the complaint was filed in the case, and I disagree, Your Honor. I don't think that says much at all. But that's what your case hinges on, is establishing that the cumulative information conveyed in the letters is inadequate to satisfy the settlement requirement that there be a written explanation. That's correct. And if I, not to dwell on the point, but I believe that this word clear, which, as I said, Wells Fargo used itself, stems from the motion that the parties filed in California in the class action lawsuit in which they characterized this obligation, and they used that word. So I think that's why that word keeps popping up. And I think any requirement to provide an explanation implicitly should be clear. Counsel, the July 30, 2013 letter contains several paragraphs of their reasons for denying the request. Are you saying that was after this lawsuit was filed? It was. Okay. By a matter of days, but yes. And the reason that that letter is not any more adequate than the others is because what would be adequate would be for Wells Fargo to have provided the borrower its calculation. This is a mathematical formula under both HAMP and MAP2R. It's complex, but it's basically math. But they told you the methodology they were going to use. Excuse me. They told your client in the course of all of this, before discovery, how they were going to do the calculations. They did not tell you the actual calculations until after discovery. But haven't they met any obligation by explaining the methodology? They still have not provided the calculation. To this day, we do not have a piece of paper that lays out this calculation. The most that we've received are affidavits saying... Why isn't that sufficient? The affidavits simply state that we entered the appropriate numbers into the computer logarithm, and this is what was spit out. Now, in counsel's brief to the district court, he does lay out in a chart somewhat of a calculation, but it's clearly not the calculation. It really kind of takes Mr. Foley's attempt at a calculation and pokes holes at it. So the district court judge, in a very carefully done opinion, sets forth calculations, and he says the problem with your client's calculations is it did not include interest fees, condo association fees, that sort of thing, and that it's undisputed that those fees had to be included in the calculation. That's correct. What's your response to that? But the judge's calculation also leaves some pieces missing. For example, the most glaring one is no principle reduction. In the MAP2R formula, you can see very clearly that there is at least the potential for principle forgiveness, and the judge started out his calculation with not only the original principle, but actually a higher number. The original principle was $455,000. He started north of $500,000. Isn't there a footnote that deals with that and says, well, He recognizes you've made an argument of that sort, but you haven't provided any evidence whatsoever. That's because we never got the bank's calculation. This entire case is sort of turned on its head in that Mr. Foley, flailing a little bit, trying to, as best he could, come up with what he thinks the calculation should be, and the bank sitting on its hands poking holes, oh, you did this one wrong, you did that one wrong, you didn't include this, you didn't include that. It really should be the other way around. What the judge should have said to Wells Fargo is, if you want summary judgment, if you intend to meet your burden under the summary judgment standard, you need to show your calculation and you need to show why your calculation is correct. I thought that happened, though, and the judge, when you said, well, no, the principal should have been $455,000. Well, we can lower it. The judge took your $455,000 figure and did the waterfall and came out you still didn't qualify, and the real dispute wasn't over the principal, as I understand it, but it was over whether you had to work in home association fees and insurance, which your client said no and they said yes. Well, that was the bank's argument as to why Mr. Foley's calculation was incorrect, but our argument as to why the judge's, since we don't have Wells Fargo's calculation, our argument as to why the judge's own calculation is incorrect is primarily because of the principal forgiveness that is not a part of it. And if you look at the formula in the settlement agreement and you look at the judge's calculation, they don't match up. There's a lot of details that should have been in there that just weren't. And the judge, I think, generously did his best to fill in the gap that the bank left. I see I'm out of time, but thank you. You have two minutes. May it please the court. My name is David Bazar. I represent the defendant, Appley, Wells Fargo Bank. This court should follow the very well reasoned of the district court and affirm. I'd like to start by just addressing a point of contention that's quite clear in the record, which is whether Wells Fargo provided the data to closing counsel. Mr. Hedas was not counsel at the time that Wells Fargo provided the data. The data was, this is all in the record. What data? The actual waterfalls. The methodology or the actual? The actual waterfalls, the actual analysis, computer printouts, showing the input, output data, the waterfall analysis was not only provided to. As to his particular case. As to his predecessor counsel. Yeah. Under the terms of a protective order. This was Victoria McCallum. But it's in the record, in the trial court record, and the trial court expressly relied on it. In its opinion, granting summary judgment to Wells Fargo, it references the affidavit of Elizabeth Ann Nichol in support of Wells Fargo's motion for summary judgment. That affidavit attaches, as it exhibits, the waterfall analysis. What Mr. Hedas is doing is he is conflating two separate analyses. One analysis is the analysis that Wells Fargo conducted, which is under the affidavit of Elizabeth Ann Nichols, under the waterfalls that were required under the settlement agreement. Through that affidavit and the affidavit of Michael Dolan, which is also referenced in the district court's opinion, Wells Fargo presented the only proof to the district court of the actual calculations that were run. What the district court did, and what Mr. Hedas is conflating, is that rather than rely on those calculations to grant summary judgment to Wells Fargo, he did the even if, they're all disputed. He said they're not disputed because there's no evidence in the record. The only evidence in the record is that Wells Fargo established that it complied with the settlement agreement when it ran the calculations four times. Four calculations, one for each modification review. One for him the first time, denied. One for Matt Duarte the first time, denied. And the second time. And then what the district court said is, all right, even if I get past that, let me look at the challenge that Mr. Foley is making. And then it looked at Mr. Foley's calculations. Counsel, we sort of know. We've read the district court opinion. Yes, sir. Can I go back to the first point, the explanation point? He seems to argue that you adopted the clear written formulation as opposed to written formulation. What is your response to that? Well, first of all, we didn't do that. The settlement agreement, it is what it is. And the parties have actually stipulated to what the settlement agreement says. It's a written document, and it says what it says. It says what it says, but if both parties to it afterwards characterized it in a way that wouldn't run counter to the reading, we might give significance to that. And I think he's saying that after it was signed, so it's not parole evidence, you have described the requirement as clear. And we simply want to know, is that correct or not, or don't you know? Well, I don't have the statement in front of me, so I can look it up, but I don't know off the top of my head exactly what it says. What I can tell you is what our intentions were. And I can also tell you something that I don't think anybody knows at this point. I discovered it yesterday in preparing for this oral argument, which is that this court in its prior opinion, I'll call it Folding 1, relied upon and cited a document that does not exist. It relied upon and cited a settlement agreement that was attached to the then complaint of the plaintiff, which was since amended, that used the word, used that word in it. It said, and this is the actual language that was cited, quoted by this court, and it was quoted again from, we believe now, a document attached to the plaintiff's complaint that's not a real document. It says, provide some of the class members who do not qualify for HAMP and MAC2R modifications within 30 days of the defendant's receipt of all required documentation from the settlement class member with a written explanation which shall be copied to League Class Counsel, which clearly explains the reason that the modification was denied. But this was an unsigned document that was attached to the plaintiff's complaint. Okay. Why don't you both send us Rule 28J letters within, say, five days after this oral argument on this question of whether the bank in its papers before our court adopted the clear written explanation. Okay? We've heard enough argument on that point. Yes, Your Honor. My second question has to do with that one of the letters advised fully that the bank considered him for a MAC2R modification and he was denied due to, and I'm going to quote, excessive forbearance. I don't know what that term means. How would the average person know what that term means? Is it a term of art in the banking world? What does it mean? Right. Your Honor, I can see the point that the average person probably would not know what that term meant. All of these letters say that if you have any questions, to call and contact. And, in fact, this borrower did exactly that, to call and contact. But a written explanation, the phrase itself suggests that it will be an explanation. And if the bank uses jargon that nobody can understand, how is that an explanation? So, Your Honor, what it requires, our position is what it requires the bank to do is to provide the basis for its decision. The borrower doesn't have to understand what the basis is. The bank has to explain what its basis is. That's what it requires. And, in fact, the district court in the California case has interpreted it in exactly that way. This is from the Emory-Wachovia Decisions, 2013 U.S. Law 542-4963. This is a case cited in my opponent's brief. And there what they looked at is they said that if the actual language of the settlement agreement has two sentences with respect to this written explanation, the first sentence governs Wells Fargo's obligations to the class members and requires that if a class member submits all required documents, Wells Fargo must provide any denial of loan modification within 30 days of such document. The second sentence governs Wells Fargo's reporting requirements to class counsel, requiring that Wells Fargo must tell class counsel which class members did not qualify loan modification and the reasons for those denials. So, in other words, how the district court, and remember, there's lots and lots of class members who are out there who are getting these same letters that have, so it's not like this letter was unique to this borrower. These are form letters. And... That hardly makes me feel better. I understood, Your Honor. But that was the settlement that was reached. I mean, we introduced copies of the back and forth where the class council said, well, I want them to get more information. And we said, we want them to get less. I believe that in the context of all of the letters, the written explanation requirement has been met. But I still don't know what that phrase is supposed to mean. And I take it from your answer, you don't know what that phrase means. Excessive forbearance, Your Honor. It's not on the record, I don't believe, which is why I'm a little hesitant to tell you what my personal belief is. No, I don't want your personal belief. Is this a term of art in the banking world? Yes. Do you know that? I do. It is a term of art, at least of my client. And what I believe my client understands it to mean is that the borrower couldn't afford the wrong modification within program criteria. The program criteria, by the way, the program criteria did look at potential principal reduction. And you can actually see that if you were to examine the waterfalls that were done for the map to our modification. Well, this whole program under HAMP, under the settlement agreement, they're forbearance programs. No, no, these are permanent loan modification programs, Your Honor. In other words, there will be a forbearance. The bank has certain rights under the existing documents, and it's not going to foreclose based on those if someone can qualify for a modified loan. It will instead modify the loan. That's correct, Your Honor. That's what you do in a commercial workout if there's forbearance. They don't refer to it as a forbearance agreement because that implies something more temporary. They look at this as a permanent loan modification that reinstates the borrower to a performing loan status. But then if it's only temporary, why would it even be relevant here? It's not temporary. That's my point, Your Honor, is that this is off of a permanent loan modification that if granted to the borrower, the borrower is reinstated under the loan and becomes current with a performing loan. And so it is not temporary in nature. Okay. I think I'm beginning to get it. The bank is the one exercising the forbearance, and it would be excessive from the bank's point of view for it to use this situation as a forbearance situation. Is that what it's supposed to do? I don't think so, Your Honor. I think that you're... I tried. To try to answer Your Honor's question, and I'll conclude if I may. Go ahead. Thank you, Your Honor. I think their intent in using those words is to convey that the loan as modified within the program criteria would not be affordable to the borrower. And they're using those words, excessive forbearance, in the context of conveying that it would not be an affordable loan modification. I believe that that's their intent. In using those words, and ultimately that when reading all these documents together, their intent was made clear. This document was, in fact, sent prior to the... The last adjustment for clearance was actually sent prior to the lawsuit being filed. It may have been received after, but it was sent prior. Thank you, Your Honor. Okay. Thank you. Counsel? Just a final point. Whatever language is used in those letters, and I believe if you look at them, you'll be as frustrated as Mr. Foley was and as I am in reading them, what I think they all essentially say is that your monthly financial obligations are too high compared to your income to qualify. That is not an explanation. That's a conclusion. Of course, if the borrower doesn't qualify, it's for that reason. Otherwise, the borrower would qualify. So it's sort of like saying you're... They might have been not a class member. They might have been submitting something too late. There might have been a change to the property. There could be other reasons. I concede that. But other than, I suppose other than those, the main thrust of it is you have to have adequate income compared to your monthly mortgage payment, modified monthly payment, to be able to satisfy it in the future. So in other words, the letters all said you're not eligible because you're not eligible. How many class members complained about the adequacy of the letters? I don't know specifically. Did class council complain? Well, class council specifically complained and this got a lot of traction in the Northern District of California about the notice that he was receiving, which the provision that we're talking about, I think it's two sentences. One talks about the notice that should be... But I'm talking about the letters to the class members. Was there a complaint about that? My recollection from reading those cases is class council was complaining about the notice that he received, which I think is the same thing as what the actual class members received. Thank you. Thank you.